JAMES RONALD PENNINGTON, *Infant, v.* CRANBERRY FUEL COMPANY

(No. 8368)

Submitted May 13, 1936. Decided June 20, 1936.

*Dillon, Mahan & White* and *McGinnis, Ashworth & Mann,* for plaintiff in error.

*W. A. Thornhill, Jr.,* and *Ned H. Ragland,* for defendant in error.

KENNA, JUDGE:

James Ronald Pennington, an infant who sued by his next friend, recovered a judgment in the Circuit Court of Raleigh County against the Cranberry Fuel Company for damages sustained by him from drinking cocoa made from the contents of a can in which there was a dead mouse. To that judgment, the defendant below prosecutes this writ of error.

The only questions for decision arise upon the sufficiency of the plaintiff's proof to sustain the verdict of the jury. The evidence shows that the cocoa was purchased at a store operated by the defendant sometime in December, 1933. A servant from the household in which plaintiff lived went to the store and asked for a can of Hershey's Cocoa. Opler's Cocoa was supplied instead, but this substitution was noted and acquiesced in before the cocoa was used. Some three weeks after the can of cocoa was purchased, the plaintiff drank some of it and became ill. The putrified mouse was discovered in the can in such position as to indicate that it was there when the cocoa was packed. The can of cocoa was prepared

by a reputable manufacturer, was received by the defendant in a sealed package or can that remained unbroken at the time of sale, and it was customary to sell the cocoa in such sealed packages.

The plaintiff sought recovery on two grounds. The first ground was negligence on the part of the defendant, and the second, the breach of an alleged implied warranty of the cocoa as fit for human consumption which arose out of the sale.

We find no basis in this record for sustaining recovery on the ground of negligence. The article in question was customarily handled in sealed packages, and it was both received and sold by the defendant in that condition. The uncontradicted proof shows that the cocoa sold by the defendant was of a standard brand, put up by a reputable manufacturer, and that it was inspected before being placed in stock. No degree of care on the part of the defendant could have disclosed the presence of a foreign substance inside the sealed container.

The remaining question is that of implied warranty. It must be confessed at the outset that the decided cases upon the question of law upon which this phase of the case turns are in conflict, and that there are well reasoned statements to be found on both sides of the question. After careful examination and consideration, we have concluded that the better reasoned rule is to the effect that there is no warranty of fitness by a retailer who purchases goods of a reputable brand from a jobber or manufacturer in sealed packages or containers and sells them in the same condition that they were in when purchased, and without the opportunity of inspecting or of otherwise determining the condition of the contents of the packages. There might, however, be a question of negligence in cases where the outside condition of the package or other circumstances would be such as to convey information concerning the contents or to put the retailer on inquiry.

It is to be remembered that the general rule of sales is *caveat emptor* (let the buyer beware). This rule is based upon the supposed fact that in all ordinary circum-

stances, the buyer has as much opportunity to acquaint himself with the condition of the goods bought as has the seller. He knows more than does the seller about his own requirements and the use to which he intends to put the goods he purchases. As it was discovered that the weight of modern commerce could not be sustained without increasing dependence being placed in the integrity and candor of those conducting it, the crudity of this ancient rule had to undergo adjustments by the courts. These took the form of established exceptions to the rule of *caveat emptor*, one of them being that in certain instances, the law would imply that the seller warranted the fitness of the articles sold to meet the purpose for which they were intended by the buyer. This implied warranty did not arise where the buyer specified and purchased a certain identified or described article, no matter whether the seller knew the purpose for which it was intended or not. This was because in the purchasing of a specific article, the buyer was placing reliance in himself and was not relying upon the skill, judgment and integrity of the seller to supply his needs. The exception arose where the buyer made known to the seller the purpose for which he desired to use the article, and, instead of selecting the article himself and relying upon his own skill and judgment under the rule of *caveat emptor* which ordinarily applied, relied upon the skill and judgment of the seller to select for him an article which would meet those needs. In these circumstances, there was an implied warranty of fitness on the part of the seller that the article would meet the known need for which the buyer intended it. This was a recognized exception to the rule of *caveat emptor*, and it was upon the fact that the buyer relied upon the skill and judgment of the seller that the exception was based. See *Schaffner* v. *National Supply Co.*, 80 W. Va. 111, 92 S. E. 580, and the many authorities there cited and discussed.

Public necessity and the superior experience and opportunity for inspection that the seller usually has, has required the extension of this exception to the ancient

rule of *caveat emptor* to the purchase and sale of food-stuffs. The purpose for which foodstuffs are intended is, of course, well known, as is the fact that the ordinary purchaser of them has little or no opportunity to discover their condition. In a society where vastly the larger number are sustained by bought food, it is indispensable that the law should be such as to encourage the utmost care in its handling and distribution. Yet, we must not lose sight of the fact that here we are discussing an exception to the rule of *caveat emptor*, and that this exception is based upon the fact that the seller not only knows the purpose for which the goods are to be used, but that the circumstances are such as to make it appear that the buyer has relied upon the skill and judgment of the seller to supply his needs.

Can we say that in purchasing goods contained in a package known to have been sealed by the manufacturer or packer, so that no opportunity is afforded the retail seller to inspect the contents the buyer is relying upon the skill and judgment of the seller as to the condition of what the sealed package contains? The buyer knows that the seller has had no opportunity to exercise his experience, skill or judgment beyond the selection of the person who manufactures or puts up the goods in question. He might reasonably expect the seller's experience and judgment to protect him against goods of low grade or dishonest manufacture or preparation, and that he would exercise reasonable prudence and care in selecting the brand of the manufactured or prepared food that he would sell in sealed packages. Beyond this, we cannot see where the buyer would be relying upon the seller in the purchase of goods contained in sealed packages. The reason for the exception to the rule of *caveat emptor* we think does not extend further, and therefore, we are of the opinion that the exception itself should not be extended beyond its reason. The following cases sustain this rule: *Kroger Gro. Co.* v. *Lewelling*, 165 Miss. 71, 145 So. 726; *Scruggins* v. *Jones,* 207 Ky. 636, 269 S. W. 743; 11 R. C. L. 1124, Par. 29; Annotations, 5 A. L. R.

248, 90 A. L. R. 1269. The following are some of the authorities to the contrary: *Burkhardt* v. *Armour & Co.,* (1932) 115 Conn. 249, 161 Atl. 385, 90 A. L. R. 1260; *Ward* v. *Great Atlantic & Pacific Tea Co.,* (1918) 231 Mass. 90, 99, 120 N. E. 225, 5 A. L. R. 242; *Lieberman* v. *Sheffield Farms, etc. Co.,* (1921) 117 Misc. 531, 191 N. Y. S. 593; *Sloan* v. *F. W. Woolworth Co.,* (1915) 193 Ill. App. 620.

Being of the opinion that the plaintiff's proof, as disclosed by this record, is insufficient to sustain a recovery upon either the theory of negligence or upon the existence and breach of an implied warranty, we reverse the judgment of the Circuit Court of Raleigh County, set aside the verdict of the jury and remand the case for further proceedings in accordance with this opinion.

*Reversed; remanded.*