RICHARD BURGESS *v.* SANITARY MEAT MARKET, *a Corporation*

(No. 8942)

Submitted October 17, 1939. Decided November 21, 1939.

*Ashworth & Sanders* and *J. K. Edmundson,* for plaintiff in error.

*Hutchinson, Crouse & Trail,* for defendant in error.

RILEY, JUDGE:

Richard Burgess brought this action of trespass on the case against Sanitary Meat Market, in the Circuit Court

of Raleigh County, for the recovery of damages for injuries alleged to have been caused by diseased or infected meat purchased by plaintiff in defendant's retail store. This writ of error is prosecuted to a judgment in favor of defendant based upon a verdict for defendant directed at the conclusion of plaintiff's evidence.

Plaintiff's theory of recovery, as disclosed by the declaration, is that defendant was engaged in the business of buying and re-selling meats in retail trade; that the articles of food purchased were unfit for human consumption; that defendant is liable on the basis of either negligence or implied warranty. The case was actually tried on the theory of an implied warranty.

The defendant operated a retail meat market in Beckley. On a Saturday evening, June 11, 1938, about 8:30 P. M., plaintiff went to defendant's meat market with his two sons, Eugene Burgess and Edgar Burgess, and one Joe Collins, for the purpose of purchasing meat for the Burgess family. There some minced ham and liver were purchased. Plaintiff ordered and paid for the liver, which lay loose and sliced on the meat counter. Edgar Burgess asked for the minced ham and paid for it with money furnished by plaintiff. A part of the ham used in making the purchase had already been sliced and was on a meat slicer back of the counter. Defendant's clerk sliced some more ham from a loaf lying on the top of the counter and made up the balance. Plaintiff then took the meat to his home in Cranberry, about four or five miles away, and the two sons remained for a while in Beckley. The meat was placed in a "Frigidaire" in the apartment occupied by Joe Collins and wife, immediately downstairs from the Burgess apartment.

The Burgess family consisted of plaintiff, his wife, four sons and a granddaughter. On the evening the ham was brought home, two of the sons, Lloyd and Edgar, ate a small portion. On the following morning, the Burgess family ate breakfast about eight or eight-thirty, at which time the minced ham, liver, bread, jelly and coffee were served. Plaintiff and all four of the sons ate some of the

minced ham. Plaintiff and one of the sons ate a portion of the liver. Mrs. Burgess and her granddaughter ate neither ham nor liver. About ten o'clock, plaintiff began to experience an illness. He suffered severe cramps, nausea, and diarrhea and vomited frequently. Finally, Dr. T. F. Garrett was called and came about four o'clock. During the course of that morning, the four sons also became sick and exhibited the same symptoms. When the doctor arrived, he found Mr. Burgess' condition and that of the four sons such that he ordered Burgess to go to the hospital and suggested that the sons go also. Plaintiff and three of his sons were taken to the hospital, where plaintiff remained for about one week.

The attending physician and Dr. Ashton, a physician connected with the hospital, both testified concerning Burgess' condition. Dr. Ashton stated that plaintiff was acutely ill; that he complained of pain in his stomach; that he had diarrhea and a temperature of one hundred degrees, which continued for three days; and an acute inflammation of the lower bowels which, in his opinion, was caused "by eating food or drinking something." Dr. Garrett, the attending physician, testified that when he arrived at the house, Mr. Burgess "was mighty sick. He was vomiting and had violent pains in the stomach, and just real sick." He vouched the opinion that plaintiff's illness was caused from food or drink "or something that he had taken into the system."

In appraising this case, every reasonable inference fairly arising from the evidence, considered in its entirety, should be made in plaintiff's favor, and those facts should be assumed as true which the jury may properly find under the evidence. This rule prevails in all cases in which the judgment is based upon a directed verdict. *Hambrick v. Spalding,* 116 W. Va. 235, 179 S. E. 807; *Nichols v. Raleigh-Wyoming Coal Co.,* 112 W. Va. 85, 163 S. E. 767. Here, the evidence clearly shows that all of the persons who ate part of the minced ham for breakfast on that Sunday morning became ill, but Mrs. Burgess and the granddaughter, who partook of neither the ham nor

liver, experienced no illness. The liver could not have caused the illness, because it was not eaten by two of the sons who became ill. It cannot be said that under the circumstances of this case the jury was bound to find that the minced ham caused plaintiff's illness. However, under the broad rule applicable upon a motion to direct a verdict, it is entirely reasonable to draw such inference in plaintiff's favor. And the fact that on the Saturday night, two of plaintiff's sons had eaten several slices of the ham and apparently suffered no ill effects may be explained by the circumstances that the minced ham was made up partly from pieces previously sliced and partly from the ham loaf taken from the counter. The jury here could with propriety have drawn the inference that only the part of the ham eaten at breakfast was tainted.

This case presents a well established exception to the rule of *caveat emptor* in the law of sales. Where the circumstances are such in a sale as to give rise to a warranty, implied or express, the buyer need not beware. Under the clear weight of authority, where food is purchased from a retail dealer for immediate consumption, there is generally an implied warranty that the article sold is fit for human consumption. This rule prevails in states which have enacted the uniform sales law. Uniform Sales Act, 1 U. L. A., section 15, and note p. 117; *Holt* v. *Mann* (Mass.), 200 N. E. 403; *Rinaldi* v. *Mohican Co.*, 225 N. Y. 70, 121 N. E. 471; *Race* v. *Krum*, 222 N. Y. 410, 118 N. E. 853, L. R. A. 1918 F, 1172. It has been adopted in states where there is no statutory restrictions on creation of an implied warranty as contained in the uniform sales act. The general rule is stated in 4 Williston on Contracts, sec. 996: "At common law, in the United States, however, no implied warranty has generally been imposed on a dealer in other kinds of goods; but as to food, at least if the buyer is buying for immediate consumption, it is well settled that there is a warranty." Of course, the purchaser must rely upon the seller's judgment and integrity, but it is the general, though not uniform, rule that the mere fact that the purchase is for immediate consumption is sufficient

evidence to establish the purchaser's reliance. The rule could hardly be otherwise in the case of sale of foods for immediate consumption. A purchaser of food who does not himself select the articles may rightfully assume that the articles sold for food purposes are, in fact, so suitable. 4 Williston on Contracts, *supra.* The cases in support of the rule of implied warranty in food sales are almost legion. It would serve no good purpose to cite them here. A few will suffice: *Heinemann* v. *Barfield,* 136 Ark. 456, 207 S. W. 58, Id. 136 Ark. 500, 207 S. W. 62; *Flessher* v. *Carstens Packing Co.,* 93 Wash. 48, 160 P. 14; *Houk* v. *Berg et al.* (Tex.), 105 S. W. 1176; *Walters* v. *United Grocery Co.,* 51 Utah 565, 172 P. 473, L. R. A. 1918E, 519. For a statement of the general rule and a collation of the cases, see 22 Am. Juris. 880, 881, and notes to *Kress & Co.* v. *Lindsey et al.,* 262 Fed. 331, 13 A. L. R. 1170, 1176, 1177; *Ryan* v. *Progressive Grocery Stores,* 255 N. Y. 388, 175 N. E. 105, 74 A. L. R. 339, 344, 345, 346. An appraisal of the public policy which underlies the decided cases representing the majority view leads us to the view that a jury could have reasonably drawn the inference that the minced ham was deleterious; that it caused plaintiff's illness; and that the circumstances of the purchase have exacted from defendant an implied warranty that the ham was fit for immediate consumption. The majority view, we think, should be applied to the instant case, notwithstanding the question is *res integra* in this state. This case, however, is to be distinguished from the following West Virginia cases: *Webb* v. *Brown & Williamson Tobacco Co.,* 121 W. Va. 115, 2 S. E. (2d) 898; *Blevins* v. *Raleigh Coca-Cola Bottling Works,* 121 W. Va. 427, 3 S. E. (2d) 627; *Parr* v. *Coca-Cola Bottling Works of Charleston,* 121 W. Va. 314, 3 S. E. (2d) 499, all involving packer's or manufacturer's liability for articles intended for human consumption sold through a distributor; and *Pennington* v. *Cranberry Fuel Company,* 117 W. Va. 680, 186 S. E. 610, involving a dealer's liability for articles of food sold in sealed packages. See *Schaffner* v. *National Supply Co.,* 80 W. Va. 111, 92 S. E. 580, as to implied warranty for

articles other than foodstuffs where purchaser discloses purpose for which the goods are desired, and relies upon the seller's skill and judgment.

Of course, a food seller's implied warranty does not inure to the benefit of parties other than the purchaser. 4 Am. Juris. 881, notes 16, 17, and cases cited thereunder. However, the circumstances of the instant sale do not bring this plaintiff within the rule barring recovery. Here, plaintiff and his sons went together to the defendant's meat market and there the ham was purchased in plaintiff's presence with plaintiff's money and taken home by plaintiff himself. To preclude this plaintiff from his right to recovery, simply because plaintiff's son asked for the ham and took the package from defendant's clerk, hardly seems consonant with sound reasoning.

The pleadings here, we think, are sufficient to carry plaintiff's theory of recovery on the ground of an implied warranty. While an implied warranty in the sale of food for immediate consumption is, in its nature, contractual, its violation savors of tort. Such a breach of warranty may be set up under the practice which prevails in the Virginias either in assumpsit or in an action of trespass on the case. "A party injured by a false warranty may maintain an action either in assumpsit or case to recover the resultant damages." *Schaffner* v. *National Supply Co.,* *supra,* Pt. 1, Syl. See also, *Standard Paint Co.* v. *E. K. Vietor & Co.,* 120 Va. 595, Pt. 3, Syl., 91 S. E. 752; *Trice* v. *Cockran,* 8 Gratt. 442, 56 Am. Dec. 151; Burke's Pleading & Practice (3d Ed.), sec. 144, note 28. Accord: *Cushing* v. *Rodman,* 65 App. D. C. 258, 82 Fed. (2d) 864, 104 A. L. R. 1023.

For the foregoing reasons the judgment complained of is reversed, the verdict set aside and a new trial awarded.

*Judgment reversed; verdict set aside; new trial awarded.*

KENNA, JUDGE, concurring:

I am fully in accord with the Court's holding and wish only to reiterate the importance of not perpetuating rules

of conduct which are the outgrowth of the general law of sales and, as I look upon it, not adapted to present conditions.

While I realize that, based upon the assumption that the manufacturer or packer of foodstuff to be sold in the original package has a great deal less opportunity to inspect food than the distributor, the common law rule in many states rests a higher duty upon the local retailer than upon the packer, as this Court has done (compare the majority opinion in the case of *Webb* v. *Brown & Williamson Tobacco Co.*, 121 W. Va. 115, 2 S. E. (2d) 898 with the opinion in the present case), it is my belief that the actualities do not warrant the assumption which confines the packer's responsibility to merely the absence of negligence and extends that of the retailer to an implied warranty. As a usual thing, perhaps with an inexperienced force to wait upon a large number of customers, the retailer of foodstuffs handles a large diversity of articles: vegetables, fruits, meats, and stable and perishable edibles of every kind. On the other hand, the packer or manufacturer of foodstuff sold in sealed packages restricts his product to a certain line in the production of which he more or less specializes, and he should maintain the equipment and organization necessary to inspect and dependably pass upon its wholesomeness. To base the liability of the latter upon negligence, and to base the liability of the retailer on an implied warranty, when both are, either directly or indirectly, selling foodstuffs for domestic consumption, impresses me as rather anomalous. I believe that now the importance of public health should impose upon both the same high degree of care.